Una Aline GANTT, Plaintiff–Appellant,

v.

**WILSON SPORTING GOODS COMPANY, Defendant– Appellee.**

No. 95–5355.

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1996.

Decided May 12, 1998.

Richard M. Brooks (briefed), Carthage, TN, Charles Wesley McKinney (argued and briefed), Gordonsville, TN, for Plaintiff–Appellant.

John S. Schauer (briefed), David J. Rowland (argued and briefed), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Daniel H. Rader, III, Moore, Rader, Clift & Fitzpatrick, Cookeville, TN, for Defendant–Appellee.

Before: SUHRHEINRICH and COLE, Circuit Judges; BELL, District Judge.*

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff Una Aline Gantt appeals from the district court's entry of summary judgment in favor of Defendant Wilson Sporting Goods Co. in this action alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"). For the reasons that follow, we AFFIRM.

### I.

Plaintiff Una Gantt was an at-will employee of Wilson Sporting Goods Company ("the Company") from 1967 until her discharge in 1993. On April 1, 1991, Plaintiff suffered an on-the-job injury to her shoulder. After several months without improvement, Plaintiff's physician recommended surgery to repair a torn rotator cuff. Plaintiff informed her supervisor and the personnel office that she would be off work for six months to a year. Plaintiff's leave began on January 10, 1992. During her absence Plaintiff received tempo-

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michi- gan, sitting by designation.

rary total disability benefits through workers' compensation.

The Company's leave of absence policy was posted on the employee bulletin board. It provided for a maximum of a one year leave of absence, at the expiration of which employment would be terminated.[1] This policy had been posted for 10 years on the employee bulletin board.

In early January 1993, Bonnie Thrasher, the plant personnel administrator, called Plaintiff and asked when she would be returning to work. Plaintiff responded that she would return as soon as she received a release from her doctor, but that she had no idea at that time as to when she would be released, or what her limitations would be.

On January 14, 1993, the Company terminated Plaintiff's employment for failure to return to her employment within one year of the commencement of her leave of absence.[2] At the time of her discharge Plaintiff was 58 years old.

Approximately two weeks after her discharge Plaintiff's doctor released her to return to work with certain physical restrictions. Plaintiff did not contact the Company to appeal her termination or to seek reemployment.

On July 22, 1993, Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission. The EEOC issued a right to sue letter on February 9, 1994, and Plaintiff timely filed her complaint in the United States District Court for the Middle District of Tennessee alleging that her termination violated the ADA because the leave of absence policy has a disparate impact on individuals with disabilities and because the Company failed to accommodate

her disability. Plaintiff also alleged that her termination violated the ADEA because the leave of absence policy has a disparate impact on older employees. Plaintiff appeals from the district court's entry of summary judgment in favor of Defendant Wilson Sporting Goods.

## II.

■ We review a district court's grant of summary judgment de novo, *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996), using the same standard of review that is applicable in the district court. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A.

■ Plaintiff alleged in her complaint that the Company's leave policy violates the ADA because it is applied most often to ill or injured employees. The district court granted the Company's motion for summary judgment on the ADA claim. The court determined that the policy did not violate the ADA as a matter of law because there was no evidence that the policy was applied unfairly or inconsistently enforced.

---

1. The policy provides in pertinent part:

   A regular employee who becomes ill or injured and whose claim of illness or injury is supported by satisfactory medical evidence, will be granted a leave of absence to cover the period of such illness or injury up to a maximum of six months. Satisfactory medical evidence, and by consent of the Company, such a leave may be extended an additional six months.

   . . . .

   Upon the expiration of a leave of absence, the employee's employment with Wilson Sporting Goods Company will be terminated.

2. The termination letter states in pertinent part:

   This is to inform you that your leave of absence expired January 11, 1993. Wilson Sporting Goods' policy states that a leave of absence can be granted for a period not to exceed one year. Therefore, your employment will be terminated.

Plaintiff contends on appeal that the district court erred in this determination because there was evidence that the policy had not been applied consistently. In the 3½ years prior to Plaintiff's termination only two other employees were terminated under the leave of absence policy, both after a workers compensation injury or sick leave. One of them, Juanita Martin, had been on leave for approximately 15 months due to a work related injury before she was terminated.

The stated purpose of the ADA is to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title I of the ADA, which prohibits discrimination against disabled persons in employment, defines "discriminate" to include using standards, criteria, or methods of administration "that have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3)(A). The Equal Employment Opportunity Commission ("EEOC"), as the agency charged by Congress to interpret and enforce the ADA, 42 U.S.C §§ 12116 & 12117, has issued interpretive guidelines in conjunction with the regulations. These guidelines provide that "Leave policies or benefit plans that are uniformly applied do not violate this part simply because they do not address the special needs of every individual with a disability." 29 C.F.R. pt. 1630, App. § 1630.5.

■ The Company's leave of absence policy does not distinguish between disabled and non-disabled employees. It is a uniform policy that requires termination of any employee who does not return to work at the expiration of the leave period. Plaintiff's comparison of herself to another disabled employee who received more favorable treatment gives rise to no logical inference of discrimination on the basis of disability. *See Myers v. Hose*, 50 F.3d 278, 284 (4th Cir.1995); *Vande Zande v. State of Wisconsin Dept. of Admin.*, 44 F.3d 538, 545 (7th Cir.1995). The district court properly entered summary judgment for the Company on Plaintiff's ADA claim of disparate impact.

### B.

■ Plaintiff also alleges that defendant violated the ADA by failing to accommodate her disability. The district court rejected this claim on the basis that Plaintiff never requested a reasonable accommodation.[3] Plaintiff admits that she never made a request for an extended leave or any other accommodation. Nevertheless, she contends she had no need to ask because she did not understand that she was on a leave of absence, the Company knew about her injury because it was paying her temporary total disability benefits, and she told the personnel director that she intended to return to work as soon as her doctor released her.

■ The applicable EEOC regulations provide that it is "unlawful for a covered entity not to make reasonable accommodation to the *known* physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a)(emphasis added). The Commission's interpretive guidelines indicate that generally "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630 App. § 1630.9. "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." *Id.* There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee.[4] The employer is not required to speculate as to the extent of the

---

**3.** The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

**4.** It is well settled in cases brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the precursor to the ADA, that reasonable accommodation is not at issue if the plaintiff has never requested accommodations. *Lue v. Moore*, 43 F.3d 1203, 1206 (8th Cir.1994); *Wood v. President of Spring Hill College*, 978 F.2d 1214, 1222 (11th Cir.1992).

employee's disability or the employee's need or desire for an accommodation.

During her leave of absence Plaintiff never made a request to return to work and never requested any kind of accommodation from the Company. Plaintiff complains that the Company failed to warn her before it applied a posted personnel policy, but she never contacted the Company after she received notice of her termination to request reconsideration in light of her misunderstanding of the leave policy. Even after she received her doctor's release she did not contact the Company to discuss accommodation for her disability.

██ The last thing the Company heard from Plaintiff was that she did not know when she would be able to return to work. Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected. *Myers,* 50 F.3d at 283.

Because Plaintiff made no request for accommodation the district court properly found that she failed to create an issue of fact as to whether or not the Company failed to reasonably accommodate her.

### C.

██ Plaintiff has not come forward with any direct evidence of disability discrimination. A plaintiff may prove employment discrimination under the ADA, however, on circumstantial evidence, using the prima facie case and burden shifting method articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[5] *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995); *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793 (7th Cir.1995); *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

██ An alternative basis for affirming the district court's entry of summary judgment on Plaintiff's ADA claim is Plaintiff's failure to make out a prima facie case of disability discrimination under the ADA. A prima facie case under the ADA requires a plaintiff to establish that (1) he is a disabled person within the meaning of the ADA, (2) he is qualified, that is, with or without reasonable accommodation which he must describe, he is able to perform the essential functions of the job, and (3) the employer terminated him because of his disability. *White,* 45 F.3d at 360–61.

██ There is no dispute that Plaintiff was a disabled person. Nevertheless, because she was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job. "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall v. National Educ. Ctrs. Inc.,* 31 F.3d 209, 213 (4th Cir.1994). *See also Carr v. Reno,* 23 F.3d 525, 529 (D.C.Cir.1994).

When Plaintiff was called after failing to come to work for an entire year she gave no indication as to when she would be able to return to work. There is no question of fact that Plaintiff was not qualified for the position at the time of her termination. Accordingly, she has failed to make out a prima facie case and is entitled to no protection under the ADA.

### III.

Plaintiff's age discrimination claim, as articulated in her complaint, rests upon her assertion that the Company's leave of absence policy violates the ADEA because older employees are more likely to require a leave of absence greater than one year. The district court determined that Plaintiff's claim under the ADEA failed because Plaintiff presented no evidence of a correlation between age and length of absence, and be-

---

**5.** Plaintiff must first establish a prima facie case of discrimination that will create a presumption of unlawful discrimination. Once the plaintiff has made a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. Once

the employer has come forward with a nondiscriminatory reason for firing the plaintiff, the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994).

cause such a correlation, even if shown, would be insufficient to show that the Company's action was motivated by age as opposed to other legitimate factors.

■ The district court correctly entered judgment for the Company on Plaintiff's ADEA claim. Although we stated in *Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 872 (6th Cir.1990), that a disparate-impact theory of age discrimination may be possible, we have subsequently noted that in light of the Supreme Court's decision in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), there is now "considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory." *Lyon v. Ohio Educ. Ass'n & Professional Staff Union*, 53 F.3d 135, 139 n. 5 (6th Cir.1995).[6] Moreover, even if a disparate-impact claim were allowed, to establish a prima facie case Plaintiff would have to support her claim by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [termination of employees] ... because of their membership in a protected group." *Abbott*, 912 F.2d at 872. Given Plaintiff's failure to present any evidence at all to support her adverse impact theory, judgment was properly granted in favor of the Company on this claim.

■ On appeal, however, Plaintiff does not pursue her disparate impact theory. Instead, she appears to assert a different theory of age discrimination based upon disparate treatment. She asserts that summary judgment was improper because she was 58 years old at the time of her termination and the Company "had no other reason to dismiss Plaintiff other than ostensibly because of a leave of absence rule when she wasn't even on a leave of absence."

■ A claim of disparate treatment under the ADEA requires proof of discriminatory motive. *Lyon*, 53 F.3d at 138. "[T]he ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors—pension status, seniority, wage rate—that are empirically correlated with

age." *Allen v. Diebold, Inc.*, 33 F.3d 674, 677 (6th Cir.1994)(citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Plaintiff has offered no direct evidence that would tend to show that the drafting or execution of the leave policy was actually motivated by an intent to discriminate against older employees. Neither has Plaintiff offered sufficient circumstantial evidence from which age discrimination could be inferred. To establish a prima facie circumstantial case of age discrimination under the disparate treatment theory Plaintiff was required to introduce evidence sufficient to support a finding that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position either lost or not gained, and (4) a substantially younger person replaced, or was selected over, her. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994).

Plaintiff has not shown that a substantially younger person replaced her or was treated more favorably than her. Nor has she shown that Defendant was aware of a disparate effect on older employees, such that we could infer intent from knowledge. On this record Plaintiff has not established a prima facie case of age discrimination and the district court correctly entered judgment in favor of the Company.

## IV.

■ Finally, Plaintiff argues that the reasons given for her termination were a pretext for disability and age discrimination. Because she has not established a prima facie case of either age or disability discrimination, under the *McDonnell Douglas* burden shifting procedure the court's analysis is over and there is no need to address the question of pretext. Nevertheless, because both parties have argued this issue on appeal, we confirm for the record that the district court properly found that the Company's stated reason for Plaintiff's discharge was not pretextual.

■ A plaintiff may demonstrate pretext by showing that the proffered reason had no basis in fact, the proffered reason did not

---

6. "The Court's focus in *Hazen Paper* on Congress's intent to prevent discrimination based on inaccurate and damaging stereotypes suggests that incidental discriminatory effects arising from facially age-neutral policies are not redressable." *Lyon*, 53 F.3d at 139 n. 5.

actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge. *Manzer,* 29 F.3d at 1081.

The evidence of pretext identified by Plaintiff is limited to the following facts: (1) the leave of absence policy identified in the discharge letter was posted on a board, while another leave policy was published in the employee manual; (2) Plaintiff was not warned that she was about to be terminated; (3) Plaintiff's work record was good and there was no other reason to terminate her; and (4) an extension of the leave policy for three weeks would have cost the Company nothing. The district court correctly determined that none of these factors tends to show that the Company's application of its leave of absence policy was untrue, did not actually motivate the discharge, or was insufficient to motivate discharge.

## V.

The district court properly determined that there are no genuine issues of material fact and that Defendant Wilson Sporting Goods Co. was entitled to judgment as a matter of law. Accordingly, we **AFFIRM** the district court's decision to grant Wilson Sporting Goods' motion for summary judgment.