Bonnie **HUMMEL**, Plaintiff,

v.

**COUNTY OF SAGINAW,** Saginaw County Sheriff's Department, Defendants.

No. 99–CV–10301–BC.

United States District Court, E.D. Michigan, Northern Division.

Nov. 7, 2000.

Michael J. Shovan, Smith, Bovill, Saginaw, MI, Richard L. Alger, Jr., Ralph H. Dinse, P.C., West Branch, MI, for Plaintiff.

Peter C. Jensen, Jensen, Smith,Saginaw, MI, Peter C. Jensen, Jensen, Gilbert, Saginaw, MI, for Defendant.

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

LAWSON, District Judge.

#### I.

Plaintiff, Bonnie Hummel, was employed by the defendant, Saginaw County Sheriff's Department ("Department"), from October, 1991 through June, 1996. Her primary job for the Department was as a building security officer. As a member of the Department, plaintiff was also a member of a collective bargaining unit represented by the Police Officers Association of Michigan ("POAM"). As such, her terms and conditions of employment were governed by a valid Collective Bargaining Agreement ("CBA") among the Department, Saginaw County, and the POAM.

In October 1994, plaintiff informed the Department that she had been diagnosed with adenosquamous carcinoma of the upper lobe of her left lung. She remained employed on a full-time basis until June 5, 1995. At that time, she requested a medical leave of absence to facilitate her pursuit of treatment, and the request was granted. In June 1995, plaintiff underwent surgery to remove a portion of her left lung.

The plaintiff contends that on March 22, 1996 she attended a meeting with Saginaw County Sheriff McIntyre and Undersheriff Renico and was informed for the first time that the most recent CBA between the defendants and the POAM, plaintiff's union, modified the prior, two-year leave policy by changing it to a one-year leave allowance followed by termination if the employee did not return to work. The one-year provision was incorporated into the 1995-to-1998 CBA which took effect April 1, 1995, eight weeks prior to the commencement of plaintiff's medical leave of absence. Plaintiff alleges that she asked at that time to be placed on a "personal leave of absence," but she was told that she was bound by the terms of the CBA and, therefore, if plaintiff did not return to work by June 5, 1996, she would be terminated in conformity with the CBA. Article 15 of the CBA, entitled "Illness/Disability Leave," states in pertinent part:

*Section 2.*

Regular full-time employees with one (1) year or more of service shall be eligible for Disability Pay subject to the

following condition. An employee unable to work for reason(s) of serious illness or a non-work related injury shall be paid sixty percent (60%) of his/her basic weekly gross wage for twelve (12) months or the employee's department seniority whichever is less, payable bi-weekly beginning the fifteenth day of disability. Absence due to reoccurrence of the same illness or injury shall be paid accordingly, except, however, no more than the period described shall be paid for the same illness or injury.... *Section 5.*

Disability payments shall terminate when the employee returns to regular work except in the case of a light duty assignment, if directed by medical authority and approved by the Employer; when the treating physician's statement of disability expires and an extension is not provided; when the employee retires under M.E.R.S. as a result of disability or normal service retirement, or after 12 months pursuant to Section 2, above. If disability benefits are exhausted and the employee cannot return to work, the employee's employment with the County of Saginaw shall be terminated. If an employee is terminated because of exhausting disability leave, all insurance and other employment benefits will also terminate.

1995–1998 Collective Bargaining Agreement, Article 15 §§ 2, 5.

The plaintiff did not return to work by June 5, 1996, one year after plaintiff's medical leave began. In accordance with the CBA, the defendants paid the plaintiff for 129 hours of personal-time-off (PTO) credits accrued through September 1995, and she was terminated. In September of 1996, plaintiff wrote a letter to the sheriff requesting re-employment and reinstatement of her PTO credits. She offered to reimburse monies previously paid to her for PTO credits. Her request was denied.

Plaintiff stated in a deposition that the first time she was capable of returning to work subsequent to the expiration of medical leave was September, 1996. However, she provided no medical release or written confirmation from her physician permitting her to return to work at that time. Plaintiff's first return-to-work authorization from her physician was presented to the defendants in June, 1997, one year after her disability leave ended. The physician, Dr. Khalid Masood Malik, furnished a written statement dated June 11, 1997 indicating only that "[t]he above patient has been under my care and I have advised her that she may return to work today with no restrictions." The defendant contends that Dr. Malik did not perform adequate medical tests on the plaintiff before he furnished the statement, but neither party has presented any evidence from Dr. Malik which provides a factual basis that either supports or undermines his conclusion.[1]

In the meantime, the plaintiff had already filed a complaint with the Michigan Department of Civil Rights and Equal Employment Opportunity Commission ("EEOC") in February, 1997. The defendants then sought a review of plaintiff's records by another physician pursuant to C.F.R. § 825.310. Dr. David H. Garabrant conducted a record review on February 20, 1998. He observed that the plaintiff had a history of pulmonary dysfunction and that in 1994 "her lungs were incapable of supplying the amount of oxygen necessary to perform exercise as modest as climbing 2 flights of stairs." After surgery to treat her lung cancer (a left upper lobectomy), pulmonary function testing in October, 1997 demonstrated that plaintiff's "airway obstruction was substantially worse in 1997." After reviewing the job requirements of a building security officer which included "arresting subjects with weapons, ... encounter[ing] irate or disturbed peo-

---

1. The defendant stated at oral argument that Dr. Malik's deposition had been taken, but neither party has furnished it to the Court or otherwise made it a part of the record in this case.

ple [who] ... have to be physically restrained, ... [and the] ability to walk, stand, bend, kneel, lift 150 lbs. and restrain violent persons," Dr. Garabrant concluded that the plaintiff "does not have the pulmonary capacity to perform the essential duties of Building Security Officer for Saginaw County."

Dr. Garabrant examined the plaintiff in March, 2000. He found that "[b]ecause of her pulmonary impairment, she was unable to exercise beyond a work load of 120 watts. This level of exertion is roughly equivalent to walking at 4.5 to 5 miles/hour, gardening, or climbing stairs." Once again, Dr. Garabrant concluded that "it is extremely unlikely [the plaintiff] can perform the duties required in her position as an officer at the Saginaw County Sheriff's Department."

Upon notification from the EEOC that an attempt to conciliate her claim was unsuccessful, the plaintiff filed a three-count complaint in this Court alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., a violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2611, et seq., and a claim under state law for violating the Michigan Persons with Disabilities Civil Rights Act ("MPDCRA"), Mich.Comp.L. §§ 37.1101, et seq. The FMLA count was dismissed by stipulation. The defendants moved for summary judgment [dkt # 22] on plaintiff's remaining claims. The Court heard oral argument on the motion on October 17, 2000. For the reasons stated below, the Court **GRANTS** the defendants' motion for summary judgment.

## II.

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. A party opposing a motion for summary judgment must show by affidavits, depositions or other factual material that there is "evidence on which the jury could reasonably find for the [non-moving party]."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

A party may support a motion for summary judgment by demonstrating that an opposite party, after sufficient opportunity for discovery, is unable to meet her burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may not merely rely upon the pleadings to oppose a motion for summary judgment but must come forward with affirmative evidence in the form of materials described in Rule 56(c) to establish a genuine issue on a material fact. *Id.* at 324, 106 S.Ct. 2548. Even in complex cases, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

## III.

The parties do not dispute that the defendants, as plaintiff's former employer, are covered by the terms of the ADA. That legislation prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ When an employer moves for summary judgement on an ADA claim, an employee must come forward with evidence which demonstrates genuine material fact issues on each of the following elements: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 779 (6th Cir.1998)(citing *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996))

The defendant asserts that the plaintiff in this case was fired because she did not return to work within the time prescribed by the CBA following a medical leave of absence. The plaintiff claims that she sought an accommodation from her employer in the form of an extended leave of absence. The record in this case is not clear as to the precise request which the plaintiff made of her employer. However, viewing the factual allegations and the reasonable inferences drawn therefrom in the light most favorable to the plaintiff, as the Court must do in adjudicating a motion for summary judgment, the Court concludes, for the purpose of this motion, that the plaintiff told her employer in March, 1996 that she could not return to work within the time prescribed by the CBA because of the treatments she was receiving for her cancer and resulting complications, that she desired to return to work at a later date, and that she thought she could do so if given additional time to recuperate.

Citing *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042 (6th Cir.1998), the defendants argue that compliance with the leave provisions of the CBA, which is uniformly applied, insulates them from a claim of discrimination under the ADA. In *Gantt,* the plaintiff was an at-will employee who suffered an on-the-job injury resulting in a disability that required her to take time off work. The defendant's policy provided for a one-year leave of absence, and termination of employment thereafter if the employee did not return to work. Before her leave period expired, the plaintiff informed the defendant that she would return to work as soon as she received a medical release from her doctor. However, the one-year period elapsed and plaintiff was terminated. Two weeks after her termination plaintiff received a return to work release from her doctor, but plaintiff did not seek re-employment with the defendant. Instead, she filed an EEOC claim and thereafter a lawsuit.

The Court of Appeals rejected plaintiff's claim that the defendant's leave policy discriminated against disabled people, finding that it was "a uniform policy that requires termination of any employee who does not return to work at the expiration of the leave period." 143 F.3d at 1046. Likewise, the Court rejected plaintiff's claim that her employer failed to provide a reasonable accommodation to the disability because the plaintiff never made any request for an accommodation. *Id.* Finally, the Court held, as an alternative basis for affirming the trial court's summary judg-

ment in favor of the employer, that plaintiff's ADA claim failed because she could not show that she was qualified to do the job, with or without a reasonable accommodation. The Court stated:

> There is no dispute that Plaintiff was a disabled person. Nevertheless, because she was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job. "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 213 (4th Cir.1994). *See also Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994).

143 F.3d at 1047.

*Gantt* is distinguishable, argues the plaintiff in this case, because Ms. Gantt never requested an extension of her leave period established by company policy. Ms. Hummel made such a request in this case in March, 1996 before her medical leave period expired. Plaintiff cites *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775 (6th Cir.1998), for the proposition that an extended leave may, in some circumstances, constitute a reasonable accommodation.

The plaintiff in *Cehrs* was found to be disabled because of a skin condition that allowed her to work while it was dormant, but prevented her from working during "flare-ups." The plaintiff contended that the ADA obliged her employer to accommodate her transitory periods of disability by granting her temporary leaves of absence. The Court observed that the employee had the initial burden of establishing that a reasonable accommodation is possible, whereupon the employer then bore the burden of showing that the accommodation is unreasonable and imposed an undue hardship. 155 F.3d at 781. *See also Monette v. Electronic Data Sys. Corp., supra*, 90 F.3d at 1186 n. 12. Noting that the courts must give "individual-

ized attention" to each disability claim, *Cehrs*, 155 F.3d at 782, citing *School Board of Nassau County v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the Court rejected the lower court's conclusion that uninterrupted job attendance is always a mandatory job requirement. To so conclude would indulge a presumption that would preclude an examination of individual needs and hardships mandated by the ADA. The Court concluded that:

> no presumption should exist that uninterrupted attendance is an essential job requirement, and ... a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances.

*Id.* at 783.

The Court held, however, that as an overarching principle:

> the employer ... does not need to prove that the employee was unqualified. Instead, the employee must bear the burden throughout the litigation of proving that she is qualified.

*Id.* at 782.

In this case, the Court assumes without deciding that the plaintiff was terminated because of her disability which prevented her from returning to work before the one-year leave expired. Giving the benefit of the doubt to the plaintiff, the Court will also view the proposed accommodation—additional leave time—as reasonable and not unduly burdensome on the employer. Indeed, neither party has addressed that point.

█ The issue that remains, however, is whether the plaintiff was qualified to perform the job even with the accommodation. *Gantt*, 143 F.3d at 1047; *Cehrs*, 155 F.3d at 781. Where it is established that an employer relied on a disability in making an adverse employment decision,

> an employee may establish a *prima facia* case of employment discrimination under the ADA by showing that he or she (1) has a disability and (2) is "other-

wise qualified" for the position despite the disability either (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.

*Hoskins v. Oakland County Sheriff's Dept.,* 227 F.3d 719, 724 (6th Cir.2000) (citations and internal quotes omitted).

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ In this case, the plaintiff has failed to come forward with evidence that is sufficient to create a question of fact on which reasonable minds might differ as to whether she was qualified to do the job of building security officer, even with the accommodation of additional leave time to recuperate. The defendants have provided detailed reports from Dr. Garabant in which he has reviewed the job requirements of a building security officer and the degree of exertion that could be required to satisfy those requirements. In his February 20, 1998 report, Dr. Garabant reviewed a pulmonary function test administered to the plaintiff on October 13, 1994, which showed severe restrictions to the point that the plaintiff's "lungs were incapable of supplying the amount of oxygen necessary to perform exercise as modest as climbing 2 flights of stairs." A pulmonary function test given on October 27, 1997, showed that the plaintiff's "airway obstruction was substantially worse...." Dr. Garabant noted that plaintiff's surgery in June, 1995, in which part of her left lung was removed, was not likely "to have improved her physiologic capacity."

In his March 20, 2000 report, Dr. Garabant conducted a more thorough review of the plaintiff's medical records and performed a physical examination. In the history portion of the report, Dr. Garabant attributes to the plaintiff a statement in which she acknowledged that when she was employed by the defendants prior to June, 1995, when confronted with a situation in which she had to run after and apprehend strong and fit adult suspects, "she has used mace and called for help from her colleagues." Plaintiff further reported that she suffered shortness of breath when she roller skates for exercise and after chasing her grandson. She could rapidly climb 3 flights of stairs but she would be "huffing and puffing" after that much exertion. Dr. Garabant performed a pulmonary function test on March 20, 2000, which revealed a "moderate obstructive defect," and a "low normal anaerobic threshold." As noted earlier, Dr. Garabant concluded that the plaintiff could not perform the strenuous tasks required by the building supervisor job description due to her pulmonary impairment.

In contrast, the only information plaintiff offered in support of her claim that she is qualified to perform the essential functions of the job is her own statement that she desires to return to work, and the conclusion by Dr. Malik dated June 11, 1997 that the plaintiff "may return to work today with no restrictions." This conclusion, however, is unsupported by any facts which might create an issue for trial. For instance, there is no evidence that Dr. Malik ever considered the job requirements, or that he tested or otherwise evaluated the plaintiff's physical ability to fulfill those requirements. There is no evidence that he even performed a physical examination on the plaintiff.

An affidavit that is merely conclusory and does not provide specific facts to raise a material factual dispute is insufficient to allow a non-moving party to avoid summary judgement. *Doren v. Battle Creek Health System,* 187 F.3d 595, 598–99 (6th Cir.1999). *See also Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 92 (1st Cir.1993), *cert denied,* 511 U.S. 1126, 114 S.Ct. 2133,

128 L.Ed.2d 863 (1994)("Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, ... it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgement.")[2] The Court finds that Dr. Malik's statement is woefully inadequate to create a fact issue on whether plaintiff was qualified to return to work, especially in light of the information furnished by Dr. Garabrant.[3]

In *Hoskins v. Oakland County Sheriff's Dept.*, *supra*, the plaintiff lost her job as a deputy sheriff because of a non-work-related injury which limited her ability to perform the strenuous tasks which the job required. She contended that the need to physically restrain jail inmates was not an essential function of the job. The Court noted that 29 C.F.R. § 1631.2(n)(1) provides that "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires...." 227 F.3d at 726. The rule provides a non-exhaustive, illustrative list of the factors to consider in determining whether a particular function is essential:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the functions;

(iv) The consequences of not requiring the incumbent to perform the functions;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

In this case, neither party has provided much information on the job duties of a building security officer. In fact, the only information before the Court is the summary of those duties in Dr. Garabant's report. Likewise, plaintiff has not contended that any of the duties, which Dr. Garabant has said plaintiff is not capable of performing, are non-essential. To the extent that the plaintiff's statements to Dr. Garabant suggest that she could fulfill the building security officer job duties by seeking assistance from other officers, or limiting her duties to non-strenuous tasks, the Court in *Hoskins* held that "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others," nor does it require "an employer ... to create a position not then in existence." *Hoskins*, 227 F.3d at 729.

As late as March, 2000, plaintiff was not physically able to return to work, and therefore is not qualified to perform the essential functions of the job. Although an extended leave of absence can be a reasonable accommodation "under appropriate circumstances," *Cehrs*, 155 F.3d at 783, the plaintiff has not directed the Court to any authority, and the Court is aware of none, which requires an employer to hold open an employee's job indefinitely. In all events, it is reasonable to conclude that plaintiff is not qualified to perform the

---

**2.** The Court is mindful of the fact that Dr. Malik's statement was not submitted as an affidavit in the form required by Fed. R. Civ. Pro. 56(e). Even if it had been so submitted, however, it would be insufficient to defeat the motion because of its conclusory nature.

**3.** In *Aetna Casualty & Surety Co. v. Dow Chemical Co.*, 10 F.Supp.2d 771 (E.D.Mich. 1998), the court, in granting summary judge-

ment to plaintiff, noted that "for an inference to be *permissible* it must be *reasonable,* and whether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary." *Id.* at 793 (quoting *Textron Inc. by and Through Homelite Div. v. Barber–Colman Co.*, 903 F.Supp. 1558, 1565 (W.D.N.C.1995)).

duties of a building security officer, even with the "temporary" extended leave of absence beyond the one-year leave period, as she allegedly requested.

Because plaintiff has failed to offer evidence sufficient to create a fact question on an essential element of her ADA claim, summary judgment must be granted.

## IV.

Plaintiff has also alleged a violation of the MPDCRA for discrimination based on her disability. Defendants assert that the claim under Michigan law mirrors the federal claim and should be dismissed if the Court dismisses the federal claim. In *Monette v. Electronic Data Sys., Inc., supra,* plaintiff brought an action against his former employer under the ADA and MPDCRA. The Court held that because claims of disability discrimination under Michigan law essentially track those under federal law, resolution of Monette's claim under the ADA also dispensed with his claims under the MPDCRA. *Monette,* 90 F.3d at 1177 n. 3. Plaintiff in this case does not address this issue in her answer to the motion. The Court finds that the rationale in *Monette* governs here. Accordingly, dismissal of plaintiff's claims under the MPDCRA is appropriate as well.

## V.

For the reasons stated above, the defendants' motion for summary judgment is **GRANTED**. The plaintiff's complaint shall be dismissed with prejudice, and judgment shall enter accordingly.

**IT IS SO ORDERED.**