**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0643n.06

**Case No. 17-5276**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Nov 20, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LORI VAUGHN, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| PARKWEST MEDICAL CENTER, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:    COLE, Chief Judge; ROGERS and GRIFFIN, Circuit Judges.

COLE, Chief Judge. The Americans with Disabilities Act ("ADA") protects employees and job applicants from discrimination based on assumptions about their disabilities. Plaintiff Lori Vaughn alleges that Parkwest Medical Center ("Parkwest") violated the ADA when it failed to rehire her as a nurse because of her partial disability rating in her workers' compensation claims and when it failed to engage in the interactive process of identifying accommodations for her. Parkwest argues that Vaughn was not qualified for a nursing position. Both parties moved for summary judgment.

The district court granted summary judgment to Parkwest and denied summary judgment to Vaughn. The district court found that Vaughn failed to establish that she was qualified to perform the essential functions of a floor nurse based primarily on her own assertions about

being unable to work as a floor nurse and her doctor's opinion about the lifting requirements of the position. Because the record presents genuine disputes of material fact on these issues, we reverse the grant of summary judgment to Parkwest, affirm the denial of summary judgment to Vaughn, and remand for further proceedings. Neither party is entitled to judgment as a matter of law.

## I.    BACKGROUND

### A.  Vaughn's Injuries

Vaughn began working for Parkwest in 2003. She worked primarily in Clinical Nurse I, Clinical Nurse II, and Clinical Nurse III positions at Parkwest and its affiliated facility until March 2013. These positions are referred to as "floor nurse" because they involve direct patient care.

In 2005, Vaughn suffered a lumbar sprain while assisting a patient. Dr. Johnson, an orthopedic surgeon, assigned Vaughn a five percent permanent impairment and released her without restrictions to return to work. In 2010, Vaughn injured her neck and back when a chair collapsed beneath her at work. Dr. Johnson diagnosed her with a multi-level cervical disc herniation and aggravation of her prior lumbar sprain. Vaughn resumed her work.

Vaughn took leave under the Family and Medical Leave Act ("FMLA") beginning in November 2012. After she was released from neck surgery on March 12, 2013, Vaughn received temporary work restrictions against climbing, pulling, pushing, repetitive stooping, bending, and lifting more than ten pounds. On March 22, 2013, Parkwest terminated Vaughn's employment because she had exhausted her FMLA leave and an additional thirty days of personal leave. Parkwest notified Vaughn that she would be eligible for rehire if released to return to work.

Dr. Johnson released Vaughn without any work restrictions in October 2013. He also assigned her a seven percent permanent anatomical impairment. Vaughn has since applied for

sixty-seven nursing positions, with nine applications at Parkwest and fifty-eight at its affiliated facilities. She applied for Clinical Nurse II, Clinical Nurse III, RN Education Coordinator-Nursing, and Clinical Educator-Nursing-Triad positions at Parkwest. The Chief Nursing Officer at Parkwest testified that all nurses at Parkwest must be able to work as a floor nurse and perform the Type A Physical Requirements while working in that capacity.

## B. Assertions About Floor Nursing

On January 27, 2014, Parkwest offered Vaughn a nursing position on a floor where she previously worked. Vaughn had not applied for the position and responded that she wanted to consult Dr. Johnson before deciding whether to accept. Randall Carr, the Human Resources Director for Parkwest, told Vaughn the offer would not remain open for long because of an urgent need to fill the position.

Vaughn had a doctor's appointment scheduled for the following day but was unable to attend due to inclement weather. She notified Carr that the appointment was rescheduled for February 18 and that she wanted to speak with Dr. Johnson about the position because he previously stated "it would be best if [she] did not work as a floor nurse." (Ex. 19, R. 22-1, PageID 220.) Later that day, Vaughn applied for two Clinical Nurse III positions at Parkwest. She emailed Carr about her interest in those positions but did not respond to the prior offer.

Vaughn then obtained a note from Dr. Johnson's office, dated January 30, 2014, that stated "[i]n my opinion, Ms. Vaughn's back pain would prevent her from working as a floor nurse." (Ex. 21, R. 22-1, PageID 222.) Dr. Johnson testified that his secretary wrote the note, he had not seen it before, and he disagreed with it because Vaughn could return to work if her restrictions were accommodated.

Shortly after, Vaughn settled her workers' compensation claims for her 2005 and 2010 injuries. A form for her benefit review conference stated "Employee has been unable to find employment within restrictions previously identified by Dr. Johnson and does not think she will ever be able to return to a nursing job on the floor or in ICU and as such, has sustained a substantial vocational disability." (Ex. 23, R. 22-1, PageID 226.) Vaughn did not sign the document but her attorney did.

On February 21, 2014, Michael Scales, Parkwest's Director of Employee Relations, wrote nursing recruiters an email with the following instructions: "Please do not send Ms. Vaughn's application out for consideration should she apply for any further positions. I know I told you to forward it previously and I apologize but we had some new developments with her yesterday." (Ex. 4, R. 25-10, PageID 435.) He testified that he sent this email because Vaughn's partial disability rating from her workers' compensation claims would preclude her from meeting the physical requirements of a floor nurse.

## C. Procedural History

Vaughn brought claims against Parkwest under the ADA, the FMLA, the Tennessee Public Protection Act, and Tennessee common law. The district court dismissed the Tennessee-law claims with prejudice, and Vaughn voluntarily dismissed her FMLA claim. The parties filed cross-motions for summary judgment on Vaughn's remaining claim of discrimination under the ADA.

On February 7, 2017, the district court granted summary judgment to Parkwest and denied summary judgment to Vaughn. The court concluded that Vaughn failed to make a prima facie showing that she was qualified for a nursing position based on Dr. Johnson's testimony and Vaughn's representations about being unable to work as a floor nurse in her communication with

Carr, the note about her back pain, and her workers' compensation application. Because the court found that Vaughn did not establish that she was qualified for the position with or without an accommodation, the court did not consider Vaughn's claim for failure to engage in the interactive process.

Vaughn appeals both the denial of her summary judgment motion and the grant of summary judgment to Parkwest.

## II.    ANALYSIS

### A.  Standard of Review

We review a grant of summary judgment de novo and a denial of summary judgment for abuse of discretion. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Summary judgment is proper if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the evidence in the light most favorable to the non-moving party and apply this standard to both parties in cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### B.  Failure to Rehire

The first issue before us is whether Parkwest discriminated against Vaughn in violation of the ADA when it failed to rehire her. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that she (1) is disabled, (2) is otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of the disability. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). The parties do not dispute that Vaughn was disabled within the meaning of the ADA or that she suffered an adverse employment action. The question on appeal is whether Vaughn proved she was qualified to perform the essential functions of a floor nurse.

### i.    Essential Functions

"Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Keith v. Cty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013) (citation omitted). The determination "is evaluated on a case-by-case basis by examining a number of factors." *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (citations omitted). These factors include: "(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3)(i)–(vii).

Summary judgment is improper when evidence on the issue is "mixed." *Rorrer*, 743 F.3d at 1041–43. For example, we considered in *Rorrer* whether driving a fire apparatus during an emergency was an essential function of a firefighter in the context of an employee who lost vision in one eye. *Id.* The city job description listed the task under the heading "Essential Functions" and the department chief and physician asserted that they followed national guidelines' classifying it as essential for firefighters. *Id.* But Rorrer and other colleagues testified that the task was optional for some firefighters and an accommodation would be easy to implement. *Id.* Based on this factual dispute between the employer's description of the position and deposition testimony, we concluded that summary judgment was improper. *Id.* at 1043.

The written job description and deposition testimony here also present mixed evidence on the essential functions of a floor nurse. The Chief Nursing Officer at Parkwest testified that floor nurses must meet the Type A Physical Requirements. The written description of the Type A Physical Requirements states that "[h]eavy lifting is required up to 50 lbs. of force occasionally and/or 20 lbs. frequently, and/or up to 10 lbs. constantly to move objects." (Ex. 2, R. 22-1, PageID 206.) Dr. Johnson, however, questioned the accuracy of the Type A Physical Requirements and testified that a floor nurse may have to lift one-hundred pounds. (Johnson Dep., RE 30-2, Page ID 573, 580.) As he explained in his deposition:

> If you have to sheet slide a patient, even with a coworker, you've got to be— you've got to limit your patient's weight to a hundred pounds, and last I checked, most inpatients are at least double a hundred pounds. . . . If [the written description] accurately reflects what they expect of her, she ought to be able to do what's—what's on that job because it fits her [functional capacity evaluation]. But we both know that a floor nurse lifts more than [fifty] pounds. (*Id.*)

Unlike the employees' testimony in *Rorrer*, Dr. Johnson's testimony is difficult to categorize. He was not testifying as an occupational specialist or representative of the employer, as he acknowledged. Nor is he an incumbent in the job or a similar job to fall under one of the seven listed considerations in the ADA regulations. *See* 29 C.F.R. § 1630.2(n)(3)(i)-(vii). His testimony was based on his general experience as an orthopedic surgeon who presumably works with floor nurses. This may be relevant evidence in the analysis because the regulations' list of considerations is nonexhaustive. *See id.* § 1630.2(n)(3) ("Evidence of whether a particular function is essential includes, but is not limited to . . . ."); *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998) (noting that "29 C.F.R. § 1630.2(n)(3) enumerates seven non-exclusive factors to weigh in determining if a function is 'essential'"). But it should not negate the employer's written description of the position at the summary judgment stage.

Without more, the essential functions of a floor nurse are unclear: Vaughn may be required to lift a maximum of fifty pounds or twice as much weight depending on whom you ask. This dispute must be resolved by a factfinder.

### ii.    Vaughn's Qualifications

We next consider whether Vaughn was "otherwise qualified" to perform the essential functions of a floor nurse—whatever they may be. We do not address Vaughn's estoppel argument based on *EEOC v. M.G.H. Family Health Ctr.*, which held that an employer is estopped from claiming that an employee is not qualified if direct evidence shows that the employer rejected the applicant because of a disability without performing an individualized inquiry. 230 F. Supp. 3d 796 (W.D. Mich. Jan. 30, 2017). Vaughn waived this argument because she did not present it to the district court or file a supplemental brief bringing it to the district court's attention before the judgment was issued.

The evidence challenging Vaughn's qualifications consists of three statements. First, Vaughn emailed Carr explaining that she wanted to check with Dr. Johnson before accepting a job offer because "he stated that it would be best if [she] did not work as a floor nurse." (Ex. 19, R. 22-1, PageID 220.) She had not applied for the position and did not follow up on the offer. Second, Vaughn obtained a note from Dr. Johnson's office stating "[i]n my opinion, Ms. Vaughn's back pain would prevent her from working as a floor nurse." (Ex. 21, R. 22-1, PageID 222.) Third, Vaughn's workers' compensation application noted "Employee has been unable to find employment within restrictions previously identified by Dr. Johnson and does not think she will ever be able to return to a nursing job on the floor or in ICU and as such, has sustained a substantial vocational disability." (Ex. 23, R. 22-1, PageID 226.) Vaughn did not sign the form but her attorney did.

Viewed in the light most favorable to Parkwest, these statements may be attributed to Vaughn even if they were made by her doctor or attorney. Vaughn requested the note about her back pain and admitted that her attorney was authorized to make statements on her behalf during her workers' compensation proceedings. *See United States v. Johnson*, 752 F.2d 206, 210–11 (6th Cir. 1985). Viewed in the light most favorable to Vaughn, however, the statements are not inconsistent with her ADA claim. Vaughn explained that she wanted to speak with Dr. Johnson about the offer and document her back pain in case she needed an accommodation, although she did not ultimately request one. She emphasized that her actions speak louder than words: why work as a floor nurse for over a decade and apply to sixty-seven nursing positions if she believed she could not perform the work?

Vaughn's employment history alone creates a factual dispute about her qualifications. *See Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 383–84 (6th Cir. 1998); *Gilday v. Mecosta Cty.*, 124 F.3d 760, 765–66 (6th Cir. 1997). Vaughn worked as a floor nurse at Parkwest and its affiliated facility from 2003 to 2013, notwithstanding her 2005 and 2010 injuries. Her supervisors praised her performance throughout. Vaughn continues to work as a floor nurse elsewhere and has held the position for about three years. She did not require accommodations at any time.

Vaughn also presented evidence that she can meet the physical demands of a floor nurse. Vaughn's functional capacity evaluation states that she may occasionally lift between 21 to 50 pounds, frequently lift 11 to 25 pounds, and constantly lift up to 10 pounds. (R. 31-2, PageID 625; Johnson Dep., R. 30-2, PageID 571.) These restrictions are consistent with the Type A Physical Requirements for a floor nurse, which state that "[h]eavy lifting is required up to 50 lbs. of force occasionally and/or 20 lbs. frequently, and/or up to 10 lbs. constantly to move objects."

(Ex. 2, R. 22-1, PageID 206.) Dr. Johnson agreed that Vaughn met the listed Type A Physical Requirements.

Parkwest argues that it was nonetheless entitled to summary judgment on the basis of *Cleveland v. Policy Management Systems Corp*., which held that when an employee makes a "sworn assertion in an application for disability benefits that she is, for example, 'unable to work'" and later brings an ADA claim, the employee must offer a "sufficient explanation" for the "apparent contradiction" to survive summary judgment. 526 U.S. 795, 806 (1999). Even assuming *Cleveland* applies to an assertion of partial disability in a workers' compensation settlement, this argument fails. *Cleveland* was an application of ordinary summary judgment principles. The Court reasoned that an employee's assertion that she cannot work, taken at face value, "will appear to negate an essential element of her ADA case [i.e., that she is 'otherwise qualified']—at least if she does not offer a sufficient explanation." *Id. Cleveland* merely requires the employee in this situation to do enough to create a genuine dispute of fact as to whether she is qualified. This means the employee must offer an explanation for her earlier statement "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807. Vaughn has met this burden: even if she previously "d[id] not think she w[ould] ever be able to return to a nursing job on the floor," her employment history and functional capacity evaluation could allow a reasonable juror to conclude that she is qualified. (Ex. 23, R. 22-1, PageID 226.)

Based on this record, a genuine dispute of material fact remains as to Vaughn's qualifications to perform the essential functions of a floor nurse. Summary judgment is therefore improper for either party.

### C. Failure to Engage in the Interactive Process

The second issue before us is whether Parkwest discriminated against Vaughn in violation of the ADA when it failed to engage in the interactive process. The interactive process is a "good-faith exploration" of "the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Keith*, 703 F.3d at 929 (citations omitted).

The failure to engage in the interactive process is only actionable if a qualified employee establishes a prima facie showing that she proposed a reasonable accommodation. *Rorrer*, 743 F.3d at 1041; *Keith*, 703 F.3d at 929. The employee must initiate the interactive process by requesting an accommodation. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998) ("There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee."). Once an employee makes a request, the employer must make a good faith effort to determine the appropriate accommodation. *Id.*; *Keith*, 703 F.3d at 929. If no accommodation is proposed, however, "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt*, 143 F.3d at 1046–47.

The parties agree that Vaughn did not request an accommodation when applying to positions at Parkwest. Nor was Parkwest "required to speculate" about Vaughn's interest in an accommodation when she emailed Carr about her rescheduled doctor's appointment and application to two nursing positions. *See Gantt*, 143 F.3d at 1046. Although an employee does not need to use specific words to request an accommodation, the employee's intent must be clear from the context. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016). Two applications in the course of sixty-seven applications do not send a clear signal that those

particular vacancies would accommodate Vaughn's disability. Vaughn did not update Carr about the outcome of her doctor's appointment or say anything about the two positions except that she was "very much interested in either." (Ex. 20, R. 22-1, PageID 221.) Without any evidence that Vaughn requested an accommodation, we reject this claim.

## III.    CONCLUSION

For these reasons, genuine disputes of material fact remain as to the essential functions of a floor nurse and whether Vaughn was qualified to perform them. We accordingly reverse the district court's grant of summary judgment to Parkwest, affirm the denial of summary judgment to Vaughn, and remand this matter for further proceedings consistent with this opinion.