**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0563n.06

No. 11-1053

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 31, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| KARL MELANGE and KATHLEEN MELANGE, | ) ) ) |  |
|  | ) |  |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
|  | ) |  |
| CITY OF CENTER LINE, | ) |  |
|  | ) |  |
| Defendant-Appellee. | ) |  |

Before:  MOORE, GIBBONS, and ALARCÓN, Circuit Judges.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff-appellant Karl Melange brought suit against the city of Center Line, Michigan, alleging that Center Line had terminated him in violation of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act. The district court granted summary judgment in favor of Center Line.  For the reasons below, we affirm.

**I.**

Karl Melange began his employment as a custodian with Center Line in 1992.  In August 2005, Melange suffered a closed head injury and in the course of his treatment was diagnosed with

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

-1-

hydrocephalus, an excessive accumulation of cerebrospinal fluid in the brain. After being cleared to return work in 2006, Melange fell off his bicycle in July 2007, injuring his shoulder, and was again pronounced unable to work. Starting at that time, Melange was placed on short-term disability leave. On January 14, 2008, after twenty-six consecutive weeks of short-term disability leave, Melange was automatically placed on long-term disability pursuant to the terms of the applicable collective bargaining agreement (CBA).

While on long-term disability leave, Melange met with a series of doctors, including Dr. Diane Klisz-Karle and Dr. David Lustig, none of whom cleared him to return to work. In May 2008, Melange decided to have a ventricular shunt implanted to alleviate the symptoms of hydrocephalus. After the surgery, Melange's neurosurgeon recommended that Melange not return to work until he was further evaluated.

On July 7, 2008, Center Line sent Melange a letter, directing that he appear for follow-up appointments with Klisz-Karle on July 18, 2008, and with Lustig on July 22, 2008. The letter also stated that "[u]ntil all written reports are received by both Dr. Lustig and Dr. Karle, you will remain on Long Term Disability and are not authorized by the city to return to work." On July 18, as directed, Melange met with Klisz-Karle, who deemed him still unable to return to work because of "the persistent visual-spatial perceptual deficits and the memory and learning deficits"—all of which raised "significant concerns about his ability to safely operate large equipment at work."

Center Line received Klisz-Karle's evaluation on July 30 and issued a termination letter to Melange on July 31. Center Line explained that pursuant to the CBA, Melange had been placed on

six months of short-term disability benefits from July 2007 to January 14, 2008, and had then been placed on sixth months of long-term disability benefits from January 14 to July 14, 2008. Therefore, according to the terms of the CBA—which provided that employees unable to return to work after twenty-six weeks of long-term disability leave would be considered terminated—Melange's long-term benefits had elapsed on July 14, 2008, and Melange was terminated. Center Line explained that "[t]his action is predicated on the report . . . from Dr. Diane Karle, Ph.D., . . . wherein Dr. Karle concluded that you are unable to work for the reasons detailed in her report."

In his deposition, Melange acknowledged that he began receiving long-term disability benefits staring in January 2008. He also acknowledged he knew that, pursuant to the CBA, he had to return to work within twenty-six weeks or he would be terminated.

In mid-August, two weeks after sending the termination letter, Center Line received a letter from Lustig, dated July 29, 2008. Lustig had reevaluated Melange on July 29 and disagreed with the assessment of Klisz-Karle. Lustig recommended that "Melange be given an opportunity to return to work under supervision . . . ." He recommended that if Melange proved unable to perform, he should be laid off permanently.

Nearly a year after his termination, on May 14, 2009, Melange filed a claim with the Equal Employment Opportunity Commission (EEOC) and, in November 2009, filed suit against Center Line. In count one of his complaint, Melange alleged that Center Line had failed to accommodate him, in violation of both the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., and the Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 *et seq*.

In count two, Melange alleged that Center Line mistakenly regarded him as disabled, and terminated him in violation of the ADA and PWDCRA. In count three, Melange's wife alleged loss of consortium as a result of Center Line's unlawful acts.

On December 13, 2010, the district court granted summary judgment in favor of Center Line. The district court found that, contrary to what Center Line contended, Melange had timely filed a claim before the EEOC. The district court calculated the 300-day time limit for Melange to file an EEOC claim from the date that he had received the letter from Center Line notifying him of his termination, rather than from the effective date of his termination. However, in all other respects, the district court found in favor of Center Line. The court found that Melange was not a "qualified individual" within the meaning of the ADA because "it is undisputed that at the time of his July 14, 2008, termination [Melange] had not been authorized to return to work by any medical professional." The court also acknowledged that Center Line had indicated in a letter that Melange would remain on long-term disability until Center Line heard from both Klisz-Karle and Lustig but found that the statement was "nothing more than an instruction that [Melange] [could not] return to work until medically cleared" and did not "create any sort of enforceable obligation." Further, the district court also found that Melange had failed to request accommodation prior to his termination. Melange had never himself requested an accommodation, and Lustig's untimely letter, even if somehow relevant, could not reasonably be viewed as a request for accommodation because it was more akin to a "try and see" plea than an accommodation request. Thus, the district court granted summary judgment in favor of Center Line, and Melange appealed.

**II.**

We review the district court's grant of summary judgment *de novo*. *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010). In so doing, we view the factual evidence and draw all reasonable inferences in favor of Melange as the nonmoving party at summary judgment. *See id.* Summary judgment is only "appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). "The moving party bears the burden of proving that there are no genuine issues of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

**III.**

Congress enacted the ADA "with the noble purpose of 'provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tucker v. Tenn.*, 539 F.3d 526, 531 (6th Cir. 2008) (quoting 42 U.S.C. § 12101(b)(1)). Under the ADA, employers are prohibited from discriminating against a qualified employee with a disability on the basis of that disability by "not making reasonable accommodations to the known physical or mental limitations of [that employee] . . . , unless [the employer] can demonstrate that

the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(a), (b)(5)(A).

In order to establish a *prima facie* case of disability discrimination under the ADA for failure to accommodate, Melange must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). Here, only elements two (whether Melange is a "qualified individual") and four (whether Melange requested an accommodation) are at issue.

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8). This court has flatly held that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (internal quotations marks omitted). Melange's job as a custodian, which involves manual labor, requires his attendance. Thus, if Melange cannot show that he was authorized to return to work prior to his termination, he cannot be considered a "qualified individual" and his *prima facie* case fails. In addition, if Melange cannot show that he requested a reasonable accommodation prior to his termination, his *prima facie* case also fails. The employee bears the burden of requesting a reasonable accommodation. *Johnson*, 443

F. App'x at 983; *see also Gantt*, 143 F.3d at 1046–47. Once the employee requests an accommodation, the employer has a duty to engage in an "interactive process" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (internal quotation marks omitted). But if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered. *See Lockard v. Gen. Motors Corp.*, 52 F. App'x 782, 788 (6th Cir. 2002).

## A.

Melange argues that the CBA, pursuant to which he was terminated after twenty-six weeks of consecutive long-term disability, violates the ADA. If Melange is correct and the CBA is invalid, then his precise date of termination would be irrelevant. Melange's argument, however, is meritless.[1]

The provision of the CBA with which Melange takes issue reads as follows:

---

[1]For the reasons the district court articulated, we agree that Melange timely filed his application with the EEOC within the 300-day period and thus it is necessary to reach the merits of his claim. However, the district court did not consider Melange's specific challenge to the CBA because it found that such claims must be brought under § 301 of the Labor Management Relations Act. This is an incorrect statement of the law. An employee who sues an employer for breaching the terms of a CBA does so through § 301. *See Vencl v. Int'l Union of Operating Eng'rs Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). But here, Melange does not allege that Center Line breached the terms of the CBA; rather he alleges that the CBA *itself* violates the ADA. This is a different challenge, and one that need not be brought under § 301. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 698–99 (7th Cir. 1998) (examining, in action not brought under § 301, whether a CBA's medical layoff policy violated the ADA).

> An employee who has been on short-term disability for 26 consecutive weeks and cannot return to work full-time without restrictions shall immediately be placed on the City's long-term disability (LTD) plan . . . . Employees unable to return to work in a full-time capacity without restrictions after the first 26 weeks of long-term disability leave shall be considered to have their employment terminated.

Our decision in *Gantt* sharply undermines Melange's claim that the CBA's leave provision violates the ADA. Like Melange, the plaintiff in *Gantt* took one year of leave but was not released by her doctor to work, nor did she request an accommodation, at any point during the year and was therefore terminated pursuant to the company's leave policy. 143 F.3d at 1045, 1047. And like Melange, the plaintiff in *Gantt* argued that her employer's leave policy violated the ADA. The policy that was at issue in *Gantt* is similar to the one outlined in the CBA and reads as follows:

> A regular employee who becomes ill or injured and whose claim of illness or injury is supported by satisfactory medical evidence, will be granted a leave of absence to cover the period of such illness or injury up to a maximum of six months. Satisfactory medical evidence, and by consent of the Company, such a leave may be extended an additional six months . . . . Upon the expiration of a leave of absence, the employee's employment with Wilson Sporting Goods Company will be terminated.

*Id.* at 1045 n.1. This court swiftly rejected Gantt's assertion that the leave policy violated the ADA because the "policy does not distinguish between disabled and non-disabled employees. It is a uniform policy that requires termination of any employee who does not return to work at the expiration of the leave period." *Id.* at 1046.

To the extent that Melange challenges the facial validity of the CBA under the ADA, his claim fails under *Gantt*. Here, as in *Gantt*, there is no evidence that the leave policy in the CBA is not uniformly applied. Moreover, by providing for the termination of an employee after one year

of disability leave, the CBA is not an outlier; in fact, a one-year leave period appears rather standard. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 & n.4 (6th Cir. 2000) ("Our review of case law in this and other circuits disclosed no cases where an employer was required to allow an employee to take a leave of absence for well in excess of a year . . . as a reasonable accommodation to the employee's disability."); *see also United Paperworkers Int'l Union v. Inland Paperboard & Packaging, Inc.*, 25 F. App'x 316, 319 (6th Cir. 2001) (CBA entitled employees to one-year leave of absence). The only difference between the policy in *Gantt* and the CBA here is that the terms of the CBA state that employees "unable to return to work in a full-time capacity without restrictions after the first 26 weeks of long-term disability" will be terminated. Melange is presumably troubled by the phrase "without restrictions," which could—at least conceivably—be read to hamper an employee's ability to secure a reasonable accommodation upon request, in violation of the ADA. However, the plain language of the CBA certainly does not prevent Melange from asking for an accommodation. Further, Melange has not cited any authority suggesting that this type of provision is facially inconsistent with the ADA.[2] With so little to buttress his argument, Melange's facial challenge must fail.

---

[2]Melange's single citation is to an EEOC press release which describes that Sears, Roebuck, & Co. entered into a consent decree in 2010 in the Northern District of Illinois in response to EEOC allegations that it maintained an inflexible worker's compensation policy and terminated employees without providing reasonable accommodation. From this sparse authority, which would be at best persuasive, it is impossible to determine (1) what Sears's leave policy was and (2) how it compares to the CBA policy at issue here. Moreover, because the litigation ended in a consent decree, the district court never found that Sears's policies violated the ADA, and Sears did not so admit. *See* Consent Decree, at ¶¶ 2, 20, *EEOC v. Sears, Roebuck, & Co.*, No. 04-C-7282 (N.D. Ill. Sept. 29, 2009).

To the extent that Melange lodges an as-applied challenge, his claim also fails. Because Melange never requested an accommodation prior to receiving a termination letter from Center Line, *see* Part B., *infra*, Melange never gave Center Line a chance to grant or deny an accommodation. Thus, he cannot show whether Center Line would have interpreted the "without restrictions" language in the CBA in a manner as restrictive as he suggests. In short, Melange's as-applied challenge fails because the provision in question has not been applied.[3]

**B.**

Nonetheless, whatever the provisions of the CBA, Center Line must abide by the ADA's requirement to—after an employee has requested a reasonable accommodation—engage in an "interactive process" to explore potential accommodations that could overcome the employee's limitations. *Kleiber*, 485 F.3d at 871. We assume that Melange was employed by Center Line until as late as July 31, 2008, when Center Line notified Melange of his termination. And as of July 31, even if Melange were qualified to return, Center Line had received no request for reasonable accommodation. Melange concedes that Lustig's evaluation, conducted on July 29, 2008, was not received by Center Line until some two weeks later, after even the latest conceivable termination date.

Therefore, Center Line did not violate the ADA by terminating Melange, and we need not decide whether Lustig's letter would constitute a reasonable request for accommodation. And

---

[3]Melange also did not allege that such a request would have been futile.

because Melange's ADA claim fails, so too does his PWDCRA claim.  *See Donald v. Sybra, Inc.*,

667 F.3d 757, 764 (6th Cir. 2012).[4]

## IV.

For the foregoing reasons, we affirm the decision of the district court.

---

[4]Melange does not appeal the district court's denial of his regarded-as-disabled claim and his wife's loss-of-consortium claim.  Therefore, these claims are waived. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005).