**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0881n.06

No. 14-1362

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 21, 2014*
DEBORAH S. HUNT, Clerk

MARK JUDGE,                                )
                                           )
    **Plaintiff-Appellant,**         )          ON APPEAL FROM THE
                                           )          UNITED STATES DISTRICT
v.                                         )          COURT FOR THE WESTERN
                                           )          DISTRICT OF MICHIGAN
LANDSCAPE FORMS, INC.,                     )
                                           )
    **Defendant-Appellee.**          )          **OPINION**
                                           )

Before: MOORE and COOK, Circuit Judges, and STEEH, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.** In this case alleging violations of the Americans with Disabilities Act ("ADA") for failure to accommodate and retaliation in violation of the Family Medical Leave Act ("FMLA"), plaintiff-appellant Mark Judge appeals the district court's grant of summary judgment to defendant-appellee Landscape Forms, Inc. ("Landscape Forms") on his entire complaint. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment to Landscape Forms.

**I. BACKGROUND**

Mark Judge began working at Landscape Forms on July 23, 2007, in the woodshop. R. 1 (Compl. ¶ 8) (Page ID #2); R. 32-1 (Judge Offer Letter) (Page ID #107). On April 30, 2011, Judge injured his biceps muscle in his right shoulder while working at home. R. 1 (Compl. ¶ 10) (Page ID #2). In early May 2011, Judge saw Dr. Thomas Ryan, who told him that he would

---

[*]The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

need surgery and that the recovery time usually took four to six months. R. 46-4 (Judge Dep. at 62) (Page ID #523). After this appointment, Judge met with Karen Phillips to discuss his upcoming shoulder surgery and to learn how to request FMLA leave. R. 42-1 (Judge Aff. ¶ 1) (Page ID #410). Phillips works for Landscape Forms as a Benefits Specialist in the Human Resources Department. R. 46-5 (Phillips Dep. at 14–15) (Page ID #546). Judge alleges that he "recall[s] telling . . . Karen Phillips at the time I reported my injury and discussed getting a leave under the FMLA that the recovery period from impending surgery would be 4–6 months, based on what my doctor had told me." R. 42-1 (Judge Aff. ¶ 1) (Page ID #410). Phillips denies that Judge ever gave any estimate of how long his recovery would take. R. 46-5 (Phillips Dep. at 42–43) (Page ID #553).

On May 18, 2011, Dr. Thomas Ryan performed surgery on Judge. R. 42-2 (Ryan Aff. ¶ 2) (Page ID #412). Five days later on May 23, Dr. Ryan's office submitted the FMLA Certification of Health Care Provider Form to Landscape Forms, which stated that Judge would be incapacitated and unable to perform his job from May 18 through August 10, 2011. R. 43-5 (FMLA Cert. Form at 3) (Page ID #447). Judge was approved for FMLA leave on that day to August 9, 2011. R. 43-4 (Brandenburg Letter) (Page ID #442). Judge also was approved for long-term-disability benefits beginning July 28, 2011. R. 44-3 (Reznicek Letter) (Page ID #456).

On June 6, 2011, Judge spoke with Phillips and reported that his arm would be in a cast until July 7, 2011, at which point he would contact Landscape Forms. R. 46-4 (Judge Dep. at

61) (Page ID #522); R. 46-1 (Phillips Notes) (Page ID #476).  The next time Judge and Phillips

spoke was in early August, when Judge informed Phillips that he could not use his right arm and

needed six weeks of therapy.  R. 46-4 (Judge Dep. at 65) (Page ID #523); R. 46-1 (Phillips

Notes) (Page ID #476).  Judge also presented Phillips with a new set of work restrictions, but

after Phillips asked for clearer restrictions, Judge did not follow up and did not return to work.

R. 46-4 (Judge Dep. at 78–80) (Page ID #527); R. 46-5 (Phillips Dep. at 92) (Page ID #566).

They agreed that Judge would check in again around September 16, 2011.  R. 46-1 (Phillips

Notes) (Page ID #476).

After not hearing from Judge, Phillips left Judge a voicemail on September 26, 2011

asking for updated information on his work restrictions.  R. 46-5 (Phillips Dep. at 93) (Page ID

#566).  In response, Judge faxed a note dated September 23, 2011, from Dr. Ryan with a new set

of work restrictions, but the note did not include an expected or estimated date of Judge's full

recovery.  R. 46-4 (Judge Dep. at 76–77) (Page ID #526); R. 44-5 (Ryan Letter) (Page ID #460).

That same day,[1] Phillips called Judge back and informed him that Landscape Forms was

administratively terminating him because it could not accommodate his existing restrictions,

could not leave his position open indefinitely, and needed to maintain appropriate staffing levels.

R. 46-5 (Phillips Dep. at 50–51) (Page ID #555).  Judge claims that he then told Phillips that he

"should be released and be able to go back to work full duty with no restrictions" by November

---

[1]Phillips alleges that the phone call took place on September 28.  R. 46-5 (Phillips Dep. at 51) (Page ID #555).  For the purposes of summary judgment, we assume it took place on September 26.

15, 2011. R. 46-4 (Judge Dep. at 87–88) (Page ID #529). Phillips denies that Judge told her the November 15 date. R. 46-5 (Phillips Dep. at 54–55) (Page ID #556). Phillips then sent Judge a letter, dated September 28, 2011, stating that Judge was being administratively terminated, giving the same reasons Phillips had provided in the September 26, 2011 phone conversation. R. 46-4 (Judge Dep. at 85–86) (Page ID #528–29); R. 32-3 (Termination Letter) (Page ID #158).

On October 11, 2012, Judge filed a complaint in the U.S. District Court for the Western District of Michigan against Landscape Forms alleging two counts: (1) that Landscape Forms violated the ADA and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") by intentionally discriminating against him and by failing to accommodate his disability because it had not granted him leave until mid-November 2011; and (2) that Landscape Forms violated the FMLA by retaliating against him for taking leave. R. 1 (Compl. ¶ 27–38) (Page ID #4–5). Landscape Forms filed a motion for summary judgment on Judge's entire complaint. R. 32 (Def.'s Mot. for Summ. J.).

The district court granted summary judgment to Landscape Forms on Judge's entire complaint. The district court held that Judge had established a genuine issue of material fact that his torn bicep rendered him disabled within the meaning of the ADA, but not under the PWDCRA. R. 51 (Dist. Ct. Op. at 10–11) (Page ID #599–600). However, the district court held that Judge had failed to establish a genuine issue of material fact that he had requested the accommodation of leave because he had not alleged anywhere in the record that he specifically asked for leave. *Id.* at 14–15 (Page ID #603–04). Additionally, the district court held that Judge

had failed to establish a genuine issue of material fact that he had requested a reasonable accommodation because at the time of his termination he had not given Landscape Forms a sufficiently definite date of return. *Id.* at 12–13 (Page ID #601–02). Regarding Judge's FMLA retaliation claim, the district court held that Judge had met his burden to establish a prima facie case of retaliation. *Id.* at 19–20 (Page ID #608–09). However, the district court held that Judge had not met his burden to establish that Landscape Forms' legitimate, nondiscriminatory reason for firing him—that Landscape Forms needed to maintain staffing levels and Judge had not provided a date on which he would return to work without restrictions—was pretext. *Id.* at 20 (Page ID #609).

Judge appealed the district court's grant of summary judgment. He argues that the district court erred in dismissing his failure-to-accommodate claim under the ADA and his FMLA retaliation claim. Appellant Br. at 3.[2]

## II. STANDARD OF REVIEW

"We review de novo a district court's order granting summary judgment." *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 868 (6th Cir. 2007). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing the district court's

---

[2]Judge did not appeal the denial of his intentional-discrimination claims under the ADA or PWDCRA, or the denial of his failure-to-accommodate claim under the PWDCRA. *Id.* Therefore, these claims are forfeited. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005).

decision to grant summary judgment, we must view all evidence in the light most favorable to the nonmoving party." *Kleiber,* 485 F.3d at 868.

### III.  ADA CLAIM

The ADA prohibits employers from discriminating against qualified employees with a disability on the basis of that disability.  It defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(a), (b)(5)(A).

In order to establish a prima facie case of a failure to accommodate claim under the ADA, "a plaintiff must show that:  (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation."  *Johnson v. Cleveland City Sch. Dist.,* 443 F. App'x 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).  Once a plaintiff establishes a prima facie case, the employer then bears the burden to demonstrate that any particular accommodation would impose an undue hardship.  *Id.* at 983 (citing *DiCarlo*, 358 F.3d at 419).

The only issues raised on appeal are whether Judge actually requested an accommodation, and if he did request one, whether it was reasonable.

The EEOC regulations interpreting the ADA "place[] the initial burden of requesting an accommodation on the employee." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998). Once that request is made, "the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84–85 (6th Cir. 2012) (quoting *Kleiber*, 485 F.3d at 871). "But if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered." *Id.* at 85.

Our case law establishes no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation. On one hand, we have held that the ADA does not require employees to "use the magic words 'accommodation' or even 'disability.'" *Leeds v. Potter,* 249 F. App'x 442, 449 (6th Cir. 2007). On the other hand, "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt*, 143 F.3d at 1046–47. The employee also must make it clear that the request is being made because of the employee's disability. *Leeds,* 249 F. App'x at 449.

Judge argues that Landscape Forms should have granted him a leave of absence until mid-November 2011, when he ultimately was released to work without restrictions. However, Judge fails to identify any statement he made before he was fired that could be construed as a request for leave until then. Judge's brief on appeal focuses on whether leave until mid-

November was reasonable—i.e., whether Judge needed to give a precise return date when he alleges Landscape Forms never asked for one—without identifying a clear moment when Judge alleges he actually requested leave for even an estimated timeframe in the first place. When asked at oral argument when precisely Judge requested leave for this timeframe, Judge pointed to two things: (1) his request for long-term-disability benefits and (2) his statement in the September 26 phone call that his doctor told him he would be released to work without restrictions in mid-November.

Judge's request for long-term-disability benefits cannot be construed as a request for an accommodation of leave to mid-November. Landscape Forms used a third-party company to process its short-term- and long-term-disability claims. The only information Landscape Forms received about Judge's long-term-disability claim was that his request was approved; the letter from the third-party company stated that "[d]ue to the confidential nature of the approval documentation, we are unable to provide you with a copy of the actual letter sent." R. 44-3 (Reznicek Letter) (Page ID #456). The letter says nothing about a request for leave, nor does it include any timeframe regarding Judge's ability to return to work without restrictions. *Id.*

Judge's alleged statement in the September 26 phone call likewise fails as a request for an accommodation because Judge concedes that he made the request only after Phillips told him that he was being fired. R. 46-4 (Judge Dep. at 87–88) (Page ID #529). For the purposes of summary judgment, we assume that Judge did make the September 26 statement. Moreover, even if Judge did not specifically request leave until that date, it was implied in the context of the

conversation that he was seeking to remain on leave until that date. However, we have held that, as part of establishing a failure-to-accommodate claim under the ADA, an employee must demonstrate that he or she requested an accommodation before being fired. In *Melange*, we affirmed the district court's grant of summary judgment for an employer because the plaintiff could not show that he "requested a reasonable accommodation *prior to his termination*." *Melange*, 482 F. App'x at 84 (emphasis added); *see also Blazek v. City of Lakewood*, 576 F. App'x 512, 517–18 (6th Cir. 2014) ("Even with these elements established, Plaintiff's claim falls [sic] on the ground that he did not request *any* accommodation from Defendant prior to his termination. The first time that Plaintiff raised the possibility of moving to a non-driving position was during his union grievance, several months after he was fired."). As the *Melange* court explained, the employer must first be given a chance to grant or deny an accommodation while the employee is still presently employed in order for the employee to allege that the employer failed to accommodate him or her. *Melange*, 482 F. App'x at 86.

Because we hold that Judge did not adequately request an accommodation, we do not consider whether his request for leave, if properly made, would have been reasonable.

## IV. FMLA RETALIATION CLAIM

The FMLA prohibits an employer from retaliating against an employee who takes leave under the FMLA. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). To establish a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, i.e. notifying the defendant of her intent to take leave under the FMLA; "(2) she suffered an adverse

employment action[;] and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Id.* If a plaintiff's claim is based on circumstantial evidence, *McDonnell Douglas Corp. v. Green*'s burden-shifting analysis applies. 411 U.S. 792 (1973); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff. *McDonnell Douglas*, 411 U.S. at 802–04. The plaintiff then has the burden of showing that the defendant's reasons are merely a pretext for discrimination. *Skrjanc*, 272 F.3d at 315.

The district court held that Judge had met his burden to establish a prima facie case of retaliation since he had (1) requested and taken FMLA leave, a protected activity; (2) suffered an adverse employment action, termination; and (3) there was a causal connection between the exercise of FMLA rights and the adverse employment action based on the two months temporal proximity between the end of his FMLA leave and his firing. R. 51 (Dist. Ct. Op. at 19–20) (Page ID #608–09). Additionally, the district court held that Landscape Forms had met its burden of producing a legitimate, nondiscriminatory reason—that Landscape Forms needed to maintain staffing levels and Judge had not provided a precise date on which he would return to work without restrictions. *Id.* at 20 (Page ID #609). However, the district court held that Judge had not met his burden of proving Landscape Forms' articulated reason for firing him was pretext. The district court found that the record did not support Judge's pretext argument—that

10

Landscape Forms' reason for firing him was false because he did give a precise date for his return to work. *Id*. (Page ID #609).

Two issues have been raised on appeal: (1) whether Judge met his burden of establishing the third element of a prima facie case of retaliation, that there was a causal connection between his taking FMLA leave and his termination, and (2) whether Judge met his burden of establishing pretext.

We have held that the causal connection between the protected activity and the adverse employment action necessary for a prima facie case of retaliation can be established solely on the basis of close temporal proximity. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283–84 (6th Cir. 2012) (quoting *DiCarlo*, 358 F.3d at 421) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

Judge has met his burden of establishing a causal connection between his taking of FMLA leave and his termination. We have found sufficient evidence of a causal connection where the time between when the employee's leave expired or the employee requested leave and

the employee's termination was two to three months. *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that a causal connection at the prima facie stage was established by the three months that passed between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work). Two months or less passed between the date on which Judge's FMLA leave expired (August 9, 2011) and when he was terminated (September 26, 2011). Landscape Forms characterizes the temporal proximity of Judge's claim as five months because it focuses on the time between when Landscape Forms first learned of Judge's request for FMLA leave (May 2011) and his termination. Appellee Br. at 34. However, we have measured temporal proximity from the date FMLA leave expired, not just when the employee first requested it, for the purposes of measuring temporal proximity. *Clark*, 424 F. App'x at 473. Thus, Judge has met his burden of establishing a prima facie case of retaliation.

However, Landscape Forms also met its burden of articulating a legitimate, nondiscriminatory reason for firing Judge—that it needed to maintain staffing levels and Judge had not provided a date on which he could return to work without restrictions. We have held that a defendant can meet its burden of articulating a legitimate, nondiscriminatory reason in FMLA retaliation cases when it "fires an employee who is indisputably unable to return to work at the

conclusion of the 12-week period of statutory leave." *Edgar*, 443 F.3d at 506–07. At the time he was fired, Judge could not return to work without restrictions and had not given Landscape Forms even an estimated return to work date.

In support of his argument that Landscape Forms' reason for firing him was pretextual, Judge relies on the temporal proximity between the expiration of his FMLA leave and his termination, Appellant Br. at 35; that because Landscape Forms violated the ADA in terminating him, any reason given for his termination is insufficient because "a reason that violates the law cannot be considered a legitimate, non-retaliatory reason," *id.* at 36; and his claim that other employees who had taken FMLA leave in the past had been fired soon after, *id.* at 35. Landscape Forms argues that Judge's only actual evidence that its reason for terminating him was pretextual is temporal proximity, and that proximity cannot by itself establish pretext. Appellee Br. at 33-34.

We have held that a plaintiff may meet his or her burden to "demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). In contrast to the role of temporal proximity in the plaintiff's prima facie case, we have held that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317; *see also Seeger*, 681 F.3d at 285 (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012)) ("Unlike its role

in establishing a prima facie case, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.'").

Judge has not provided sufficient evidence of pretext. Judge's argument that Landscape Forms' reason for firing him was illegitimate because, in firing him, Landscape Forms violated the ADA, is unpersuasive because Landscape Forms did not violate the ADA in terminating Judge. Judge's claim that three other employees who had taken FMLA leave were shortly afterwards fired by Landscape Forms also does not support his claim of pretext in his particular case. Evidence that Landscape Forms retaliated in the past against employees similarly situated to Judge might be some evidence that Landscape Forms retaliated against Judge, but Judge does not explain how the facts of those cases are similar to his or show that Landscape Forms actually retaliated against those employees.

Thus, Judge is left only with the temporal proximity between the expiration of his FMLA leave and his termination. But, as explained above, under our precedent temporal proximity alone is insufficient to establish pretext.

## V. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment to Landscape Forms.