NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  16a0148n.06

Case No. 15-3824

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 16, 2016
DEBORAH S. HUNT, Clerk

KENWANNA WHEAT,

    Plaintiff-Appellant,

v.

COLUMBUS BOARD OF EDUCATION,
Columbus Public Schools,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

BEFORE:  KEITH, COOK, and McKEAGUE, Circuit Judges.

COOK, Circuit Judge.  Plaintiff Kenwanna Wheat appeals from the district court's entry of summary judgment in favor of her former employer, Columbus Board of Education (Board), on her claims for violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Ohio Civil Rights Act.  Because the Board terminated Wheat for a non-discriminatory reason—her medical leave of absence exceeded the two years Board policy allowed—we AFFIRM.

I.

Wheat joined the Board as a full-time custodian in 2006.  In February 2009, she suffered an on-the-job injury leaving her shoulder constant pain.  Thinking the discomfort would subside,

she continued to work for six months until she ultimately sought medical treatment and applied for a leave of absence. Diagnosing her with shoulder tendinitis, shoulder impingement, and suprascapular neuropathy, her doctor declared her unable to return to work. After Wheat exhausted sick leave and vacation days, the Board approved an unpaid leave of absence beginning on August 3, 2009.

Multiple extensions of that leave occurred, as Wheat's doctor repeatedly affirmed her inability to work. With each extension, the Board informed Wheat by letter that her leave of absence was subject to the collective bargaining agreement governing her employment contract. That agreement directed that "the Board of Education shall grant a leave of absence for a period not exceeding two (2) successive school years where illness or other disability is the reason for the request."

More than two years after she first took a leave of absence, Wheat learned from her Bureau of Worker's Compensation (BWC) caseworker that the Board viewed her as ineligible to return to work. Wheat then presented the Board with a letter stating that she "will be returning to work" on March 26, 2012, that she is "disabled," and "will need accommodations," and requesting information about "where to report and what time." Four days later, the Board's Director of Human Resources mailed Wheat a termination letter citing the two-year leave limit.

Wheat filed a charge of disability discrimination with the Ohio Civil Rights Commission, which found "no probable cause," and the Equal Employment Opportunity Commission adopted that finding. She then filed a complaint in district court for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117, the Rehabilitation Act, 29 U.S.C. §§ 701–718, and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02(A), alleging that (1) the Board failed to

accommodate her disability and (2) wrongfully terminated her. The district court granted the Board's motion for summary judgment and Wheat now appeals.

## II.

We review the district court's grant of summary judgment de novo, affirming if the evidence—viewed in the light most favorable to Wheat—demonstrates that no genuine issue exists as to any material fact and the Board is entitled to judgment as a matter of law. *Vill. of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 377 (6th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). Summary judgment is appropriate if a party who bears the burden of proof at trial fails to establish an essential element of that party's case. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

We analyze claims made pursuant to the Ohio Civil Rights Act, the Rehabilitation Act, and the ADA under a single framework. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). To win on these claims, Wheat must show that disability discrimination was the "but-for cause" of the adverse employment action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

Here, the Board maintains that it terminated Wheat not because of her disability but for violating the contractual leave-of-absence policy included in her collective bargaining agreement. Wheat sensibly declines to challenge the legitimacy of this two-year leave policy. *See Melange v. City of Ctr. Line*, 482 F. App'x 81, 86 (6th Cir. 2012) ("[B]y providing for the

termination of an employee after one year of disability leave, the [collective bargaining agreement] is not an outlier; in fact, a one-year leave period appears rather standard.").

Instead, she argues that the Board used the contractual term as a pretext to hide its discriminatory intent, maintaining that the two-year limitation did not actually drive the Board's decision. Wheat points to the fact that twice the Board approved extensions beyond the two-year limit. And not just her—at least 17 other disability-leave employees had their leaves similarly extended. The Board explains, however, that it initially granted these extensions because presenters at a BWC Conference warned its administrators about the unlawfulness of terminating employees on workers-compensation leave. But once the administrators learned from their legal department that the law permitted enforcement of the two-year policy, the Board terminated all 18 employees for exceeding the limit. Wheat presents no evidence contesting the veracity of this explanation or showing that it failed to motivate the Board's decision. If anything, the fact that the Board fired other employees in similar fashion bolsters its account.

To support her pretext argument, Wheat also mentions that the Board provided no notice before firing her. Each extension letter from the Board, however, explains that the collective bargaining agreement, which included the two-year leave limit, governed such extensions. In any event, she cites nothing in the agreement or Board policy necessitating pre-termination notice. At bottom, Wheat offers no evidence showing that the Board's explanation masked discriminatory motives. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1049 (6th Cir. 1998) (rejecting similar evidence offered to prove pretext.) In the absence of evidence undercutting the Board's proffered non-discriminatory rationale for Wheat's termination, the district court properly granted the Board summary judgment on her wrongful-termination claim.

Wheat's failure-to-accommodate claim also fails. For such claims to succeed, "the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable." *Jakubowski*, 627 F.3d at 202 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996), *overruled on other grounds by Lewis*, 681 F.3d at 314–16); *see also Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998). Wheat never asked the Board to accommodate her physical disabilities within the two-year time frame. When she demanded to return to work some seven months after the two-year limit expired, the Board was not obliged to exempt her from its contractual leave policy. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (citing *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000)) ("[T]he employer [is not] required to waive legitimate, non-discriminatory employment policies . . . in order to accommodate a disabled employee."); *Walsh v. UPS*, 201 F.3d 718, 727 (6th Cir. 2000) ("[I]t would be very unlikely for a request for medical leave exceeding a year and a half in length to be reasonable.").

Similarly, her related claim that the Board failed to engage in the interactive process mandated by the ADA rings hollow because, again, she never requested a reasonable accommodation during the two years she was on leave. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) ("[F]ailure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that [s]he proposed a reasonable accommodation.").

Finally, Wheat seems to suggest that the Board's return-to-work policies violate the ADA in two ways: (1) by requiring a return-to-work authorization to be with "no restrictions" and (2) by excluding employees with permanent disabilities from the transitional work program. Wheat forfeited these arguments by neglecting to raise them below. *Vance v. Wade*, 546 F.3d

774, 781 (6th Cir. 2008) (citing *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006)).  They miss the mark nevertheless.

First, Wheat never triggered the Board's policy requiring a doctor's release with no restrictions because she never tried to return to work within the two-year leave period. Regardless, the Board's leave-granting letters advised that Wheat "may be eligible to return to work *with restrictions*—depending on [her] physician's recommendations." *See Melange*, 482 F. App'x at 86 (upholding a policy using the phrase "without restrictions" because it "certainly [did] not prevent [plaintiff] from asking for an accommodation").

As for her second argument, the Board's transitional work program offers various work assignments to employees hampered by temporary restrictions with the goal of returning them to full-capacity work within 90 days.  Employees with permanent disabilities, on the other hand, may return to work upon requesting an accommodation through the Board's employee relations department.  Wheat articulates no reason why this dual system flouts the ADA.  Plus, she admits she suffers from a permanent disability, rendering the transitional work program inapposite.

### III.

For these reasons, we AFFIRM the grant of summary judgment in the Board's favor.