STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss                                  CIVIL ACTION
                                                Docket No. CV-15-397

BETH CARNICELLA,
                                    STATE OF MAINE
            Plaintiff              Cumberland, ss, Clerk's Office

                                       NOV 04 2016
v.                                                          DECISION AND ORDER
                                      RECEIVED
MERCY HOSPITAL,

            Defendant

        Before the court is defendant Mercy Hospital's motion for summary judgment in plaintiff

Beth Carnicella's action for disability discrimination. For the following reasons, the motion is

granted.

FACTS

        In March 2011, defendant hired plaintiff as a per diem Registered Nurse (RN). (Supp.'g

S.M.F. ¶ 1.) In June 2011, plaintiff became a part time RN at defendant's Express Care branch in

Gorham. (Id. ¶¶ 2-3.) The part time position was for 24 hours per week, although plaintiff often

worked more than that. (Pl.'s Addt'l S.M.F. ¶¶ 6-7.) A typical shift was staffed by two RNs and

one medical assistant. (Supp.'g S.M.F. ¶ 11.) Occasionally, only one RN was present during a

shift. (Id. ¶ 12.)

        The part time position involved performing certain physical tasks, including lifting,

pushing, and pulling. (Id. ¶ 6.) The job description, which applied to all RN positions, listed as a

physical requirement the ability to lift up to 30 pounds constantly and up to 50 pounds

frequently. (Id. ¶ 4; Opp. S.M.F. ¶ 4.) In plaintiff's experience, Express Care RNs were more

likely to lift up to 30 pounds and only rarely engaged in heavier lifting. (Pl.'s Addt'l S.M.F. ¶¶

31, 33.) Plaintiff maintains that she most commonly lifted "a couple of pounds," a fact which

1

defendant disputes. (Id. ¶¶ 36-37; Def.'s Reply S.M.F. ¶¶ 36-37.) Plaintiff agrees, however, that "assisting patients into wheelchairs . . . getting them on a stretcher, crutch training, lifting, pushing, and pulling" were requirements of her job. (Supp.'g S.M.F. ¶ 6; Opp. S.M.F. ¶ 6.)

On July 29, 2013, plaintiff was diagnosed with breast cancer and learned she would need to undergo surgery. (Supp.'g S.M.F. ¶ 14.) That same day, she requested leave from work under the Family Medical Leave Act. (Id. ¶ 15.) By letter dated August 1, 2013, defendant granted plaintiff a 10-week medical leave. (Id. ¶ 17.) The letter stated: "Once you are ready to return to work, have your Physician fax me a letter . . . stating the date you're cleared to return to work." (Id. ¶ 18; Opp. S.M.F. ¶ 18.)

After her surgery, plaintiff developed lymphedema, which caused her to experience difficulty moving her left arm properly. (Supp.'g S.M.F. ¶ 19.) Plaintiff concedes that she would find it difficult to use her left shoulder to push, pull, or lift anything. (Id. ¶ 89; Opp. S.M.F. ¶ 89.) Plaintiff is right hand dominant and asserts that her lymphedema did not affect the use of her right arm. (Pl.'s Addt'l S.M.F. ¶¶ 1, 3.)

By letter dated September 20, 2013, defendant reminded plaintiff that her medical leave would expire on October 18, 2013. (Supp.'g S.M.F. ¶ 20.) The letter further stated, in bold: "You must have clearance from your Physician before you return to work." (Id. ¶ 21.) Plaintiff requested an extension of her medical leave until November 18, 2013, which defendant granted by letter dated October 10, 2013. (Id. ¶¶ 23-24.) The October 10 letter reiterated that a physician would need to clear plaintiff before she could return to work. (Id. ¶ 25.) The parties agree that no doctor has released plaintiff to return to work since the 2013 surgery. (Id. ¶ 75; Opp. S.M.F. ¶ 75.)

2

Plaintiff was unable to return to work on November 19, 2013 and requested a second extension, which defendant granted. (Supp.'g S.M.F. ¶¶ 27, 31.) Defendant expected plaintiff to return to work on December 31, 2013. (Id. ¶ 32.) Defendant sent plaintiff a letter dated December 13, 2013, which explained the process for obtaining accommodations. (Id. ¶ 33.) The letter stated in part: "It is always up [to] you to alert your supervisor or human resources to your need for accommodation." (Id. ¶ 35.) Plaintiff returned to defendant an accommodation request form indicating that she wished to participate in the reasonable accommodation process. (Id. ¶ 37.)

On December 18, 2013, defendant received a questionnaire completed by Dr. Melinda Molin, plaintiff's breast surgeon. (Id. ¶ 38; Pl.'s Addt'l S.M.F. ¶ 9.) In response to defendant's question inquiring whether there was a medical reason plaintiff could not return to work, Dr. Molin had written "yes, cannot lift over 3 pounds or do repetitive computer, telephone work." (Supp.'g S.M.F. ¶ 39.) In response to defendant's question inquiring whether plaintiff would require any accommodations, Dr. Molin had written "pending return to work—anticipated return to work 3/15/14." (Id. ¶ 40.)

Around the time Dr. Molin completed the questionnaire, she transferred plaintiff's care back to her primary care physician, Dr. Heather Schwemm. (Supp.'g S.M.F. ¶ 41; Pl.'s Addt'l S.M.F. ¶ 9.) On January 21, 2014, Dr. Schwemm sent a letter to defendant's Human Resources Director, Elizabeth Christensen, which stated that, in her opinion, it would not be appropriate for plaintiff to return to work on March 15, 2014. (Supp.'g S.M.F. ¶¶ 41-42; Pl.'s Addt'l S.M.F. ¶ 13.) Dr. Schwemm wrote that plaintiff "cannot use her left arm and I have told her that she needs to recover sufficient strength in her arm to do her job safely." (Supp.'g S.M.F. ¶ 42.) Dr.

3

Schwemm estimated that plaintiff would be able to return to work without restrictions by June 1, 2014. (Id.)

On January 24, 2014, plaintiff met with Ms. Christensen and plaintiff's supervisor, Amanda VanHorn. (Supp.'g S.M.F. ¶ 43.) Ms. Christensen informed plaintiff that defendant would extend her leave until March 15, 2014, but if she were unable to return to work at that time, defendant would need to post her position due to staffing shortages. (Id. ¶¶ 49-54.) Ms. Christensen further stated that, if defendant filled her position, plaintiff could return to work on a per diem basis. (Id. ¶ 56.)

In late February 2014, Ms. VanHorn was preparing the schedule for April, May, and June. (Id. ¶ 58.) Defendant asserts that Ms. VanHorn sent plaintiff a text message and left her a voicemail asking whether plaintiff would appear on the schedule, and that plaintiff did not return these messages. (Id. ¶¶ 60-61.) Plaintiff counters that Ms. VanHorn's messages did not inquire about adding her to the schedule and that she was in regular contact with Ms. VanHorn during this time. (Opp. S.M.F. ¶¶ 60-61.)

On March 15, 2014, Ms. Christensen left plaintiff a voicemail asking whether plaintiff would be able to return to work. (Supp.'g S.M.F. ¶¶ 63-64.) Defendant did not ask Dr. Schwemm to provide an update on plaintiff's condition at this time. (Pl.'s Addt'l S.M.F. ¶ 25.) In response to Ms. Christensen's message, plaintiff left Ms. Christensen a voicemail stating that she was not able to return to work. (Supp.'g S.M.F. ¶ 65.) Ms. Christensen interpreted plaintiff's voicemail to mean that plaintiff did not wish to remain employed on a per diem basis. (Id. ¶ 66.) Ms. Christensen processed plaintiff's termination and sent plaintiff a letter dated March 20, 2014, which stated that plaintiff's employment would end effective March 21, 2014. (Id. ¶ 67.)

4

Plaintiff was upset and surprised by the termination letter. (Pl.'s Addt'l S.M.F. ¶ 28.) She called Ms. VanHorn, who explained to Ms. Christensen that plaintiff wished to remain employed on a per diem basis. (Supp.'g S.M.F. ¶¶ 69, 71.) Ms. Christensen reversed plaintiff's termination and restored her to per diem status. (Id. ¶ 72.) Plaintiff remains a per diem employee to this day. (Id. ¶ 74.)

In April 2014, plaintiff filled out a form in connection with her application for Social Security disability benefits. (Id. ¶ 79.) In the form, plaintiff represented that she could not lift more than three pounds, had ongoing left arm and shoulder pain, and had minimal use of her left arm. (Id. ¶¶ 79-80.) She further stated: "This disability has been life altering . . . I was employed as an RN and was also an avid cook. Now I cannot do either due to my strict functional limitations, pain, and neuropathies." (Id. ¶ 81.) In August 2014, plaintiff filled out another Social Security form, in which she represented that she was unable to, among other things, use a hairdryer, drive, care for her dog, feed herself with her left hand, or perform any household chores other than dusting, for which she used her right arm. (Id. ¶¶ 83-86.)

Plaintiff filed a complaint on September 2, 2015. In the complaint, plaintiff alleged one count of disability discrimination in violation of the Maine Human Rights Act (MHRA). Defendant filed an answer on November 6, 2015 and a motion for summary judgment on August 3, 2016. Plaintiff filed her opposition to the motion on August 31, 2016. Defendant filed a reply on September 7, 2016.

DISCUSSION

1. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5

genuine dispute of material fact and that any party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one having the potential to affect the outcome of the suit." Burdzel v. Sobus, 2000 ME 84, ¶ 6, 750 A.2d 573. "A genuine issue exists when sufficient evidence requires a factfinder to choose between competing versions of the truth at trial." MP Assocs. v. Liberty, 2001 ME 22, ¶ 12, 771 A.2d 1040.

## 2. MHRA Claim

Plaintiff argues that defendant discriminated against her by (1) terminating her employment as a part time RN because of her disability, and (2) denying her reasonable accommodations. (Pl.'s Opp'n to Mot. Summ. J. 4-11.) Defendant concedes that plaintiff has a disability, but argues that defendant did not violate the MHRA because (1) plaintiff is not a qualified individual with a disability, because she has not shown that she can perform the essential functions of her employment, and (2) plaintiff has not identified any reasonable accommodation that she requested and that defendant failed to provide. (Def.'s Mot. Summ. J. 7-14.)

### A. Qualified Individual

The MHRA prohibits an employer from discriminating against a qualified individual with a disability on the basis of a physical or mental disability. 5 M.R.S. § 4572(2) (2015). Discrimination includes termination, as well as failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless providing the accommodation would impose an undue hardship on the employer. 5 M.R.S. § 4553(2)(E). "Qualified individual with a disability" means "an individual with a physical or mental disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires." 5 M.R.S. §

6

4553(8-D). "Essential functions" means "the fundamental job duties of the employment position the individual with a physical or mental disability holds or desires." 94-348 C.M.R. ch. 3, § 2(9)(A) (2014).

Although the parties dispute the frequency of moderate and heavy weight lifting, (Supp.'g S.M.F. ¶¶ 4, 8; Opp. S.M.F. ¶¶ 4, 8; Pl.'s Addt'l S.M.F. ¶¶ 31, 36-37; Def.'s Reply S.M.F. ¶¶ 31, 36-37), plaintiff does not dispute that "assisting patients into wheelchairs . . . getting them on a stretcher, crutch training, lifting, pushing, and pulling" were requirements of her job. (Supp.'g S.M.F. ¶ 6; Opp. S.M.F. ¶ 6.)

The existence of a factual dispute would ordinarily preclude summary judgment because the issue of whether certain functions are essential is a question of fact for the fact-finder. See Daniels v. Narraguagus Bay Health Care Facility, 2012 ME 80, ¶ 16, 45 A.3d 722 (summary judgment vacated because essential functions in dispute); Pinkham v. Rite Aid of Me., Inc., 2006 ME 9, ¶ 9, 889 A.2d 1009 (same). On this record, however, the dispute regarding essential functions is immaterial because plaintiff does not dispute the essential functions of her job. More important, plaintiff was never cleared to return to work. Defendant's letters to plaintiff informed her of the requirement that she obtain clearance from her physician before she could return to work. (Supp.'g S.M.F. ¶¶ 18, 21, 25.) Although Dr. Schwemm estimated that plaintiff would be able to return to work by June 1, 2014, there is no dispute that no doctor ever cleared plaintiff to return to work. (Id. ¶ 75; Opp. S.M.F. ¶ 75.)

Plaintiff therefore was not qualified to perform the essential functions of her job. See Wheat v. Columbus Bd. of Educ., No. 2:13-cv-819, 2015 U.S. Dist. LEXIS 85185, at *8 (S.D. Ohio June 30, 2015) ("Thus, if [plaintiff] cannot show that [she] was authorized to return to work prior to her termination, [she] cannot be considered a 'qualified individual' and [her] *prima facie*

7

case fails."), aff'd, 644 F. App'x 427 (6th Cir. 2016); see also Kitchen v. Summers Continuous Care Ctr., LLC, 552 F. Supp. 2d 589, 595 (S.D. W. Va. 2008); Crow v. McElroy Coal Co., 290 F. Supp. 2d 693, 696-97 (N.D. W. Va. 2003).[1] Regardless of the frequency of heavy lifting, plaintiff represented to the Social Security Administration that she had a life altering disability, could not lift more than three pounds, had ongoing left arm and shoulder pain, had minimal use of her left arm, and was unable to use a hairdryer, drive, care for her dog, feed herself with her left hand, or perform any household chores with her left arm. (Supp.'g S.M.F. ¶¶ 79-80.) She further stated: "I was employed as an RN and was also an avid cook. Now I cannot do either due to my strict functional limitations, pain, and neuropathies."[2] (Id. ¶ 81.)

B. Reasonable Accommodation

When a discriminatory practice involves the provision of a reasonable accommodation, damages may not be awarded under this subparagraph when the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide that individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

5 M.R.S. § 4613(2)(B)(8)(b) (2015). The burden of requesting an accommodation is on the employee. Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046-47 (6th Cir. 1998) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation."). There is no dispute that plaintiff did not request an accommodation. (Supp.'g S.M.F. ¶¶ 37-40, 46; Opp. S.M.F. ¶¶ 37-40, 46.)

---

[1] The Maine legislature "intended the courts to look to the federal case law to provide significant guidance in the construction" of the MHRA. Me. Human Rights Comm'n v. City of Auburn, 408 A.2d 1253, 1261 (Me. 1979) (internal quotation marks omitted).

[2] Defendant is correct that plaintiff is not qualified to testify about the relationship between her work status and her medical condition. (Pl.'s Addt'l S.M.F. ¶¶ 43-44; Def.'s Reply S.M.F. ¶¶ 43-44.)

CONCLUSION

Because plaintiff did not obtain clearance to return to work, no genuine issue of material fact exists as to whether she was a qualified individual with a disability. Even if she were, she did not request a reasonable accommodation. Accordingly, defendant's motion for summary judgment is granted.

The entry is

> Defendant's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendant, Mercy Hospital, and against Plaintiff, Beth Carnicella, on Plaintiff's Complaint.

Date: November 3, 2016

Nancy Mills
Justice, Superior Court

9